# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
### No. 22-0409V

|  |  |
|---|---|
| ARLENE WEISS,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br><br>Filed: December 5, 2025 |

*David John Carney, Green & Schafle, LLC, Philadelphia, PA,* for Petitioner.

*Irene Angelica Firippis, U.S. Department of Justice, Washington, DC,* for Respondent.

### <u>RULING ON ENTITLEMENT</u>[1]

      On April 8, 2022, Arlene Weiss filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 28, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at   https://www.govinfo.gov/app/collection/uscourts/national/cofc,  in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Because the parties could not informally resolve the issue of entitlement, Petitioner filed a Motion for Ruling on the Record. I find that Petitioner is entitled to compensation. My ruling is set forth below.

## I.    Procedural History

After Petitioner filed her claim, she filed 18 exhibits consisting of primary care records (pre-vaccination and post-vaccination), the vaccine administration record, an affidavit, women's health records, gastroenterology records, orthopedic records, and physical therapy records. ECF No. 1-9.

On May 1, 2023, Respondent filed a status report stating indicating the case was under medical review and that Respondent anticipated being able to state his position by May 31, 2023. ECF No. 19. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on May 3, 2023. ECF No. 20. Respondent filed a Response on August 21, 2023 "(Resp."). Petitioner filed a Reply on September 8, 2023 ("Reply"). This matter is now ripe for adjudication on the issue of entitlement.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the medical records, the Petition, declarations and affidavits, and in the parties' respective briefings. In summary, Ms. Weiss was 69-years old when she received a flu vaccine in her left deltoid on September 11, 2020, at Addison Centre Publix Pharmacy located in Delray Beach, Florida. Ex. 1 at 5. She did not have a history of left shoulder pain. *See* Exs. 5, 8, 12. Ms. Weiss noted in her sworn declaration,

> On September 11, 2020, I went to the Addison Centre Publix Pharmacy in Delray Beach, Florida. Since it was convenient, I decided to get my annual flu shot. While the nurse was standing and I was sitting, the influenza vaccine was injected into my left shoulder.

> Immediately after getting the flu shot, my left shoulder felt painful at the injection site. However, it was not until two weeks later where my left shoulder pain began to really present itself as the pain intensified. I have had flu shots for many years and the pain did not feel like routine shoulder discomfort. I had never experienced this level of pain after a vaccine before. After a couple of weeks, the pain in my left shoulder had not subsided and was getting progressively worse with shooting pain running up and down my left arm. Also, my range of motion started to weaken as I had trouble moving my shoulder in every direction. At the same time, I started

developing soreness in my left shoulder and upper arm along with an inability to move my arm to even a 25% capacity. My left arm and shoulder are in constant pain all day long and I could not raise my left arm just a few weeks after getting the flu shot.

Ex. 2 at 2-3.

On February 15, 2021, more than five months after vaccination, Ms. Weiss presented to orthopedist Dr. George Kolettis for complaints of left shoulder pain. Ex. 3 at 15. Dr. Kolettis noted in the history of present illness:

This is a 70 year old female who is right hand dominant and is being seen for a chief complaint of shoulder pain, involving the left shoulder. This occurred in the context of a gradual and insidious onset and no specific injury and has been treated with activity modification, which partially alleviates symptoms. She has had no surgical procedures. The pain has been present for 5 months. The left shoulder pain occurs when sleeping on shoulder, occurs at night, occurs randomly, occurs intermittently, and occurs with activity. The left shoulder pain is described as chronic, progressive, and radiating and associated with limited range of motion and worse with rotation. The left shoulder pain 7 out of 10 currently. She has the following pertinent history: *no pertinent positives. She reports occasional functional limitations.

Ex. 3 at 15. During the examination of Ms. Weiss's left shoulder, Dr. Kolettis noted pain with forward flexion and abduction, pain with external and internal rotation, and limited range of motion and crepitus with internal rotation in abduction. *Id*. at 16. Additionally, upon examining the skin on Petitioner's left shoulder, Dr. Kolettis noted that "biceps tendon tender to deep palpation." *Id*. Ms. Weiss also had positive results on the Speed test and a Hawkins impingement test. *Id*. at 17. Petitioner underwent an x-ray of her left shoulder, which showed "Type II acromion minimal degenerative changes AC joint." *Id*. at 17. Ms. Weiss was diagnosed with left rotator cuff tendinitis, along with associated diagnoses: "Bicipital Tendinitis, Subacromial Bursitis, and AC Arthritis." *Id*. at 17. Dr. Kolettis recommended at-home exercises, prescribed Mobic for her pain, and referred her to physical therapy. *Id*. at 17-18. Dr. Kolettis mentioned that surgery and steroid shots may be recommended in the future to treat her condition. *Id*. at 17-18.

On February 16, 2021, Ms. Weiss underwent an initial physical therapy evaluation at Palm Beach Aquatics & Physical Therapy by Alejandro Perez, DPT. Ex. 4 at 14. She again reported that the onset of her shoulder pain had been insidious, affecting her ability to reach overhead, lift, and carry items overhead. *Id*. On exam, Ms. Weiss had decreased

ROM and TTP of the long head of the biceps. *Id*. at 15. Physical therapy was recommended three times per week for eight weeks. *Id*. at 17.

On March 26, 2021, Ms. Weiss was discharged from physical therapy after a total of four visits because it had been more than 30 days since her last session. *Id*. at 30. Petitioner stated that she needed to stop physical therapy due to the lack of improvement in her symptoms. Ex. 4 at 30; Ex. 2 at 3. At that last PT session, Ms. Weiss reported she had no pain at rest, but did have pain with movement in some directions. *Id*.

Nearly three months later, on May 18, 2021, Ms. Weiss followed up with Dr. Kolettis. Ex. 3 at 6. She reported no pain at that time. *Id*. On exam, Petitioner's left shoulder yielded the same findings as her previous visit with Dr. Kolettis, notably pain during range of motion tests, limited range of motion, and a positive result on the Hawkins Impingement test. Ex. 3 at 7-8. Dr. Kolettis stated:

> She notes again that her symptoms started after a flu shot that she received in September. We talked about the fact that this may be related to flu shot if this was injected into the bursa after piercing the deltoid. This may have irritated the rotator cuff and initiated the bursitis that she has been experiencing.

*Id*. at 8. His impression was rotator cuff tendonitis. *Id*. Dr. Kolettis ordered an MRI of the left shoulder. *Id*. The MRI, done May 21, 2021, showed a small focal moderate grade attenuated tear of the peripheral conjoined tendon, mild fraying of the superior labrum, small joint effusion, and possible adhesive capsulitis. *Id*. at 14.

On May 26, 2021, Ms. Weiss returned to Dr. Kolettis. Ex. 7 at 3. Petitioner reported having chronic pain that occurred with activity. Ex. 3 at 10. Examinations and tests on Petitioner's left shoulder yielded the same results as the previous visit. *Id*. at 11-12. In addition to the previous diagnosis, Dr. Kolettis also diagnosed Ms. Weiss with adhesive capsulitis in her left shoulder. *Id*. at 12. Dr. Kolettis mentioned the flu shot as a potential source of her shoulder injury:

> **Plan: Other**. MRI of the left shoulder dated 5/21/2021 shows a small focal moderate grade attenuated tear of the peripheral conjoined tendon mild fraying of the superior labrum with small joint effusion. Adhesive capsulitis.
>
> This point we went over the condition natural history. Certainly the flu shot that she got could have contributed to the problem and the symptoms started. She has the above findings noted on the x-ray and MRI. We went over them and the implications. She could consider conservative treatment

4

> with physical therapy home exercise program possibly a cortisone shot. Surgery is a possibility but there is no guarantee will give her satisfactory result there is significant postoperative restrictions and rehabilitation associated. She does not wish to consider that at this point. At that time, he commented that her flu vaccination "could have contributed to the problem[.]" *Id*. Petitioner did not want to undergo surgery, instead opting to restart PT.

*Id*. Dr. Kolettis gave Ms. Weiss some at-home exercises and recommended that she return to physical therapy "even though it has not been greatly helpful in the past[.]" *Id.*

On July 16, 2021, Ms. Weiss returned to Palm Beach Aquatics & Physical Therapy for an initial examination of her left shoulder injury. In Petitioner's History of Present Condition, Alejandro Perez, DPT noted:

> **History of Present Condition/Mechanism of Injury**: Pt. is a 70 y.o female who presents to clinic with complaints of L shoulder pain after having an injection to the L arm. This condition is affecting the pt's ability to reach, lift, carry OH pain-free, lift items from fridge, reach to the cabinet for items. Imaging taken that revealed OA and osteophytes.

Ex. 4 at 33. At worst, Ms. Weiss ranked her pain as a 6/10. *Id.* During Petitioner's examination of her left shoulder, DPT Perez noted "Palpable tenderness" in Petitioner's left shoulder. *Id*. Ms. Weiss tested positive for both the Hawkins/Kennedy Test and Neer Test in her left shoulder. *Id*. DPT Perez stated that Petitioner presented "with signs and symptoms consistent with rehab diagnosis of impaired motor performance, impaired motor control, impaired flexibility." *Id*. A plan was developed where she would continue doing physical therapy three times a week for 8 weeks. *Id*.

On October 5, 2021, Ms. Weiss had her final PT session. Ex. 6 at 67. She had completed a total of six visits since her initial visit on September 13, 2021. At this session, Petitioner ranked her pain, at worst, to be 5/10. *Id*. at 65. During Ms. Weiss's discharge examination, DPT Perez noted that Petitioner continued to test positive in both the Neer and Hawkins/Kennedy Test. *Id*. at 68.

On November 3, 2021, Ms. Weiss visited Dr. Kolettis at the Boca Raton Orthopedic Group for a follow up appointment on her left shoulder pain. Ex. 7 at 8. Petitioner reported aching and chronic pain in her left shoulder at a 2/10 level. *Id*. The notes from Dr. Kolettis's examination of Ms. Weiss's left shoulder show that she continued to experienced pain during a ROM test. *Id*. at 9. Specifically, she experienced pain with forward flexion,

abduction, external rotation, and internal rotation of her left shoulder. *Id*. No new treatment was prescribed. *Id*. at 10.

On January 17, 2022, Ms. Weiss returned to Dr. Kolettis with ongoing shoulder complaints and decreased range of motion. Ex. 10 at 6. In her history of present illness, Petitioner reported medication usage and a home exercise program:

> This is a 70 year old female who is following up for Rotator Cuff Tendinitis. She was seen on November 3, 2021, at which time the following treatment recommendations were given: Continue Regimen: Continue with current prescription medication regimen. she was treated with Home Exercise Program - Shoulder and At this point as she is not having much pain but she still some restriction of motion although this has improved. She will continue with home exercise program as her therapy is expired for the rest of this year. I will follow up in 2 months or sooner if any problems.

*Id*. Ms. Weiss reported that her pain was a 6/10 with complaints of shoulder instability, pain with ongoing usage of shoulder and the quality of pain was aching and chronic. *Id*. On physical examination, Ms. Weiss demonstrated pain with forward flexion, pain with abduction, pain with external rotation, pain with external rotation in abduction, pain with internal rotation and pain with internal rotation in abduction. *Id*. at 7. Her passive range of motion was demonstrated to be restricted. *Id*. A positive speed test and positive Hawkins impingement test were also documented. *Id*. It was recommended that she continue her home exercise plan and continue with over-the-counter pain medications. *Id*. at 8.

Ms. Weiss also submitted two of her own affidavits, along with affidavits from her husband, two of her sisters, her daughter, and a friend. Exs. 2, 13-18. Her husband, Fred Weiss, stated that Ms. Weiss did not complain about her shoulder pain until right after she received the flu vaccine on September 11, 2020, and resulted in her inability to perform activities of daily living and daily household tasks. Ex. 14 at 1. Barbara Wieder, Petitioner's sister, stated that she spoke to her sister regularly and had knowledge of Ms. Weiss's vaccination and resulting shoulder injury due to their regular phone conversations. Ex.15 at 1. Ms. Weiss's neighbor, Evelyn Leiberman, stated that Petitioner "told me that she was in pain from the flu vaccine where it was administered." Ex. 16 at 1-2. Petitioner's daughter, Randi Wing, stated that she spoke with her mom almost every day and noticed that her mother was having difficulty "doing a lot of typical activities." Ex. 17 at 1. Finally, Lois Schoenfeld, Ms. Weiss's sister, stated that "after she got the flu shot, things went downhill immediately. She could no longer lift her arm, she was very restricted, and I could tell she was in a lot of pain every time I saw her through the first several months." Ex. 18 at 1-2.

### III.    Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## IV.    Ruling on Entitlement

Respondent has contested entitlement, arguing that there is not preponderant evidence to show that Petitioner experienced shoulder pain within 48 hours of vaccine administration. Resp. at 6. Respondent argued that on January 12, 2021, more than four months after vaccination, Ms. Weiss saw her gynecologist and made no complaint of any shoulder pain. *Id*. citing Ex. 12 at 30-32. Respondent noted that it was not until February 15, 2021, more than five months after vaccination, that Ms. Weiss sough attention for her shoulder. *Id*. Even then, although Ms. Weiss reported that her shoulder pain began five months earlier, she did not relate the pain back to her vaccination. *Id*.  Respondent thus contends that "the record indicates that there was 'no specific injury' precipitating the pain, and petitioner described the onset of pain as insidious and gradual, not sudden… Similarly, at her PT evaluation on February 16, 2021, petitioner described her pain as

insidious in onset and did not attribute it to her vaccination." *Id*. Respondent goes on to argue that when Petitioner finally did relate her pain back to vaccination, it was more than eight months after her vaccination and she "vaguely reported that 'her symptoms began after a flu shot that she received in September.'" *Id*.

These arguments are not persuasive. First, claimants should not be expected to report shoulder pain to specialist treaters, like a gynecologist. As I have mentioned in other rulings and decisions, a petitioner's failure to mention shoulder pain at appointments for unrelated medical conditions does not necessarily undermine onset. *Page v. Sec'y of Health & Hum. Servs.,* No. 23-1626V, 2025 WL 3141888, at *5 (Fed. Cl. Oct. 3, 2025). Respondent's suggestion that Petitioner should have complained about left shoulder pain during a gynecology appointment is unconvincing.

Second, while Respondent contends Petitioner greatly delayed treatment, the medical records refute this assertion. Dr. Kolettis did not specifically mention that Ms. Weiss related her shoulder pain to her vaccination during her February 15, 2021 visit, but he does note that her shoulder pain had begun "five months" earlier, and had been gradual and insidious. Ex. 3 at 15. In addition, during Petitioner's May 18, 2021 appointment, Dr. Kolettis specifically states that "[s]he notes *again* that her symptom started after a flu shot that she received in September." Ex. 3 at 8 (emphasis added). Thus, Ms. Weiss had clearly reported to Dr. Kolettis previously (likely during her February 15, 2021 visit) that she attributed her shoulder pain to her vaccination.

I recognize that Petitioner's medical records do not reflect a precise date of onset, and also that (as Respondent argues) the vague temporal references to onset (i.e., "*after* receiving a flu shot ...") allow for the possibility that onset occurred more than 48 hours from vaccination. But there is no counterevidence undercutting Petitioner's contention that her pain began close-in-time to vaccination, and she consistently attributed her shoulder symptoms to her flu shot. She continued to make such assertions at all subsequent medical encounters. And the affidavits submitted by Ms. Weiss and her witnesses are consistent with the medical evidence, and I have found no reason not to deem them credible otherwise.

In addition, although Ms. Weiss did not seek initial treatment for her left shoulder injury until approximately four months following her September 11, 2020 vaccination, I do not find this delay to be dispositive regarding the issue of onset. Indeed, Ms. Weiss's medical records and affidavits reflect a pattern similar to other SIRVA claims, in which injured parties reasonably delay treatment, often based on the assumption that their pain is likely transitory. *See, e.g., Tenneson v. Sec'y of Health & Human Servs*., No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *review denied,* 142 Fed. Cl. 329 (2019), (finding a 48-hour onset of shoulder pain despite a nearly six-month delay

in seeking treatment); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because petitioner underestimated the severity of her shoulder injury); *Knauss v. Sec'y of Health & Human Servs.*, 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (noting a three-month delay in seeking treatment).

These statements in the medical records, coupled with the Petitioner's affidavits, provide context for delay in seeking treatment, and do not prevent a finding that Petitioner has met the 48-hour onset requirement.

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed. Thus, based upon all of the above, Petitioner has met the elements for a SIRVA and is entitled to compensation.

## Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my ruling, **I find that Petitioner is entitled to compensation. A separate damages order will be issued.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master